**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TONY A. WILSON,**

      **Plaintiff,**

**vs.**                            **Case No. 4:08cv361-SPM/WCS**

**MICHELE A. GAVAGNI,
in her official capacity as
Executive Director of the
Florida Board of Bar Examiners,
and GLENN BASSETT,**

      **Defendants.**

_____/


**<u>REPORT AND RECOMMENDATION</u>**

Defendant Gavagni filed a motion to dismiss, doc. 21, supported by a memorandum of law, doc. 22, the second amended complaint, doc. 16, filed by the *pro se* Plaintiff.  Plaintiff has filed his response to the motion.  Doc. 26.  Defendant Bassett also filed a motion to dismiss.  Doc. 29.  Plaintiff has filed his response to that motion as well.  Doc. 34.

Plaintiff had been directed to clarify whether he was suing Defendant Gavagni in her official or individual capacities, or both.  Doc. 32.  Plaintiff's response to that order, as contained within his appeal of my order granting Defendant Bassett's motion for a protective order, states for the record that Plaintiff sues Defendant Gavagni in her

official capacity only.  Doc. 36, p. 2.  Plaintiff is suing Defendant Bassett in his individual

capacity only.  Doc. 36, p. 2.

**Allegations of Plaintiff's second amended complaint, doc. 16**

Plaintiff sues Defendant Michele Gavagni, who is Executive Director of the

Florida Board of Bar Examiners, and Defendant Glen Bassett, an Assistant Attorney

General in the Office of the Florida Attorney General.  Doc. 16.  Plaintiff resides in

Delaware and, prior to his submitting a Florida Bar application, filed a federal lawsuit in

the Middle District of Florida, case number 02-357.[1]  *Id.*, at 3.  Plaintiff contends that

during that litigation, Defendant Bassett (who was opposing counsel in the case) filed

several motions alleging that Plaintiff should be held in contempt for violating the

instructions of the court.  Doc. 16, p. 3.  The motion was denied.  *Id.*

Plaintiff alleges that Bassett also filed a Bar complaint against Plaintiff, alleging

that Plaintiff violated the court's instructions.  *Id.*  The Florida Board of Bar Examiners

determined that Plaintiff had violated court instructions, a decision which was affirmed

by the Florida Supreme Court on July 7, 2008.  *Id.*, at 4-5.  The Florida Board of Bar

Examiners (FBBE) recommended that Plaintiff's application for admission be denied.

*Id.*, p. 9.  The Florida Supreme Court affirmed that recommendation on July 7, 2008.

*Id.; see also* doc. 22, p. 1.  Plaintiff contends that the Supreme Court failed to give Full

Faith and Credit to the federal court's determination denying the motion for contempt.

Doc. 16, p. 6.  Plaintiff also contends that Defendant Bassett gave false statements to

---

[1] Plaintiff filed a case against the Department of Children and Families, his former
employer, alleging retaliation and due process violations when Plaintiff was terminated.
Doc. 22, p. 6.

the FBBE concerning Plaintiff's behavior in the federal case, *see* pp. 6-8, and claims his bar application was denied "because of [Defendant] Bassett's false and malicious statements to the FBBE." *Id.*, at 8.

Plaintiff contends that the FBBE denied his first bar application without considering Plaintiff's "First Amendment violation claim, Federal Doctrine of Res Judicata bar to relitigation claim, or his Doctrine of Full Faith and Credit claim . . . ." *Id.*, at 9. Plaintiff claims he "did not have an adequate, full, and fair opportunity in the bar admission process in the State of Florida to raise federal constitutional challenges." *Id.* Plaintiff alleges that Defendant Gavagni violated his First Amendment rights by "picking out 'lawful conduct and testimony' of the bar applicant during court litigation, and then penalize[d] the bar applicant for that 'lawful conduct and testimony.' " *Id.* Plaintiff's first bar application was denied on July 7, 2008, and Plaintiff filed a second application with the FBBE in August, 2008. *Id.*, at 9. This case was initiated on August 13, 2008. Doc. 1.

The amended complaint presents four slightly different claims. In Count I, Plaintiff alleges he is not challenging the denial of his application for admission but, rather, raising a general challenge to the constitutionality of Rule 3-11(n) of the Florida Supreme Court. Doc. 16, p. 9. Plaintiff claims the rule violates his First Amendment rights. *Id.*, at 10. As relief, Plaintiff seeks prospective injunctive and declaratory relief only. *Id.* He claims that his second application for admission will likely be denied again "because of the same protected First Amendment activity . . . " *Id.*, at 11.

In count II, Plaintiff is challenging Defendant Gavagni's refusal to recommend that Plaintiff be admitted to the Florida Bar, but not the decision of the Florida Supreme Court to deny his application.  Doc. 16, p. 14.  Plaintiff contends his claims are not inextricably intertwined with the Florida Supreme Court's order denying Plaintiff's bar application.  *Id.*, at 15.  Plaintiff wants this Court to determine whether the doctrines of *res judicata* and Full Faith and Credit apply to Bar admission proceedings.  *Id.*, at 14.

Count III asserts that the Florida Supreme Court's ruling to deny Plaintiff's bar application was procured by Defendant Bassett's false representation to the FBBE, and by Defendant Gavagni's disregard for Plaintiff's constitutional rights.  *Id.*, at 17.  Count IV asserts a claim against Defendant Bassett for malicious prosecution and for providing allegedly false testimony in the bar admission proceedings.  *Id.*, at 19.

**Basis for Dismissal**

Defendant Gavagni moves to dismiss this case for lack of subject matter jurisdiction, *inter alia*, pursuant to the *Rooker-Feldman* doctrine.[2]  Doc. 21, p. 1. Defendant further contends dismissal is appropriate because this case is not ripe as Plaintiff lacks standing.  *Id.*, at 1-2.  Defendant Bassett moves to dismiss the case because Plaintiff's claims are barred by absolute witness immunity.  Doc. 29, p. 1.[3]

---

[2] Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

[3] Although Defendant Bassett presented an affidavit to support the motion, the affidavit was not reviewed.  Defendant filed a motion to dismiss, and only the motion and Plaintiff's response have been considered.  There is no need to construe this document as a motion for summary judgment as matters outside the pleadings have not been reviewed.  Defendant Bassett's motion states that he "appeared before the FBBE voluntarily after being told that he would be subpoenaed" and that is sufficient.  There is

**Plaintiff's response, docs. 26 and 34**

Plaintiff contends he is asserting an independent claim and argues that the

Rooker-Feldman doctrine is inapplicable and does not preclude this Court's jurisdiction

for that reason.  Doc. 26, p. 3.  Plaintiff asserts he may proceed with an independent

claim under the authority of Exxon Mobil and that he is not complaining of injury by the

state court.  *Id.*, at 3-4.  Plaintiff argues that his federal claims are not " 'inextricably

intertwined' with the state court bar proceedings in the sense that it is premised on the

state court having ruled erroneously."  *Id.*, at 4.  Plaintiff specifically argues that he does

not "complain of injuries caused by the state court's decision denying [Plaintiff's]

admission to the Florida Bar . . . ."  *Id.*, at 5.  Plaintiff asserts that his claims can

"succeed without in any way calling into doubt the state court decision."  *Id.*  In response

to Defendant Bassett's motion to dismiss, Plaintiff argues that the Defendant does not

have absolute witness immunity.  Doc. 34.

**Standard of Review**

Dismissal of a complaint, or a portion thereof, pursuant to Fed.R.Civ.P. 12(b)(6)

for failure to state a claim upon which relief can be granted should not be ordered

unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his

claims which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct.

99, 102, 2 L.Ed.2d 80 (1957).  A court must accept as true the allegations of the

complaint when ruling upon such a motion.  Oladeinde v. City of Birmingham, 963 F.2d

1481, 1485 (11th Cir. 1992)(citation omitted), *cert. denied*, 113 S. Ct. 1586 (1993).  *Pro*

no need to review an affidavit for more detail of extraneous matters.

Case No. 4:08cv361-SPM/WCS

*se* complaints should be held to less stringent standards than those drafted by an

attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), *citing* Haines v.

Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

> Federal Rule of Civil Procedure 8(a)(2) . . . provides that a complaint must
> include only "a short and plain statement of the claim showing that the
> pleader is entitled to relief."  Such a statement must simply "give the
> defendant fair notice of what the plaintiff's claim is and the grounds upon
> which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d
> 80 (1957).

Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule

8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").

**Rooker-Feldman doctrine**

"The Rooker-Feldman doctrine prevents the lower federal courts from exercising

jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments

rendered before the district court proceedings commenced.' "  Exxon Mobil Corp. v.

Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454

(2005), *quoted in* Lance v. Dennis, 546 U.S. 459, 126 S.Ct. 1198, 1199 (2006).[4]  This

---

[4] The Court in Lance explained the history of this doctrine as follows:

> The Rooker-Feldman doctrine takes its name from the only two cases in
> which we have applied this rule to find that a federal district court lacked
> jurisdiction.  In Rooker, a party who had lost in the Indiana Supreme
> Court, and failed to obtain review in this Court, filed an action in federal
> district court challenging the constitutionality of the state-court judgment.
> We viewed the action as tantamount to an appeal of the Indiana Supreme
> Court decision, over which only this Court had jurisdiction, and said that
> the "aggrieved litigant cannot be permitted to do indirectly what he no
> longer can do directly."  263 U.S., at 416, 44 S.Ct. 149.  Feldman, decided
> 60 years later, concerned slightly different circumstances, with similar
> results.  The plaintiffs there had been refused admission to the District of
> Columbia bar by the District of Columbia Court of Appeals, and sought
> review of these decisions in federal district court.  Our decision held that to
> the extent plaintiffs challenged the Court of Appeals decisions themselves

doctrine operates in a narrow manner, and is limited to those situations where the losing party in state court is essentially seeking review of that judgment in an appellate posture and requesting the prior judgment be reversed or modified.  Exxon Mobil, 544 U.S. at 284-85, 125 S.Ct. at 1522.  Under the *Rooker-Feldman* doctrine, only the United States Supreme Court has the "authority to review the final judgments of state courts."  Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000) (other citations omitted).

Under the *Rooker-Feldman* doctrine, a federal court lacks jurisdiction to review state-court decisions where: (1) the party in federal court is the same party as was in state court; (2) the state-court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state-court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.  Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir .2003).  In Exxon Mobil, the Court explained the doctrine:

> *Rooker* was a suit commenced in Federal District Court to have a judgment of a state court, adverse to the federal court plaintiffs, "declared null and void."  263 U.S., at 414, 44 S.Ct. 149.  In *Feldman*, parties unsuccessful in the District of Columbia Court of Appeals (the District's highest court) commenced a federal-court action against the very court that had rejected their applications.  Holding the federal suits impermissible, we emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in this Court.  Federal district courts, we noted, are empowered to exercise
>
> – as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals – their sole avenue of review was with this Court.  460 U.S., at 476, 103 S.Ct. 1303.

Lance v. Dennis, 126 S.Ct. 1198, 1201 (2006).

> original, not appellate, jurisdiction.  Plaintiffs in *Rooker* and *Feldman* had
> litigated and lost in state court.  Their federal complaints, we observed,
> essentially invited federal courts of first instance to review and reverse
> unfavorable state-court judgments.  We declared such suits out of bounds,
> i.e., properly dismissed for want of subject-matter jurisdiction.

Exxon Mobil, 544 U.S. 280, 283-284, 125 S.Ct. at 1521.  Application of the doctrine is

limited to "state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments."  544 U.S. at 284, 125 S.Ct. at 1521-22.

Plaintiff contends his claims are not barred, however, but could continue under

Exxon Mobil.  That argument is erroneous because part of the basis for Exxon Mobil's

holding was that the federal action was filed *well before* the parallel state court

proceeding.  544 U.S. at 292, 125 S.Ct. at 1526-27.  The issue there was whether the

federal court should have dismissed the federal case when, during the course of the

proceedings, judgment was entered in the state court proceeding before judgment could

be reached in the federal court.  The Court held that dismissal on the basis of *Rooker-*

*Feldman* was not appropriate because there were parallel proceedings and the plaintiffs

had not turned to federal court to undo a state court judgment.  *Id.*, at 293, 125 S.Ct. at

1527.

This case is not on the same footing with Exxon Mobil and its holding does not

control this action.  Here, Plaintiff filed this federal lawsuit after losing in state court.

This case, therefore, is on the same footing as Feldman:

> The two plaintiffs in that case, Hickey and Feldman, neither of whom had
> graduated from an accredited law school, petitioned the District of
> Columbia Court of Appeals to waive a court Rule that required D.C. bar
> applicants to have graduated from a law school approved by the American

Bar Association.  After the D.C. court denied their waiver requests, Hickey
and Feldman filed suits in the United States District Court for the District of
Columbia.

Feldman, 460 U.S. at 465-473, 103 S.Ct. 1303, *cited in* Exxon Mobil, 544 U.S. at 285,
125 S.Ct. at 1522.  The Court held the federal district court "lacked authority to review a
final judicial determination" because only the Supreme Court is vested with appellate
authority over state courts.  Feldman, 460 U.S. at 479-86, *cited in* Exxon Mobil, 544
U.S. at 285-86, 125 S.Ct. at 1522.  A federal court would have the ability to address a
constitutional challenge to state bar rules, but would lack jurisdiction to "review a final
state-court judgment in a judicial proceeding."  Feldman, 460 U.S. at 486, 103 S.Ct.
1303, *quoted in* Exxon Mobil, 544 U.S. at 286, 125 S.Ct. at 1523.

Here, Plaintiff is not simply challenging a Bar rule of general application.  Plaintiff
is challenging the decisions in his case.  That is evident because, even though Plaintiff
contends he is challenging Rule 3-11, Plaintiff never quotes the rule or articulates his
challenge to this Rule in any meaningful way.[5]  If this case truly was a challenge to a

_____

[5] Rule 3-11(n) of the Rules of the Florida Board of Bar Examiners provides in part that
the following is disqualifying conduct for admission to The Florida Bar:

> **3-11 Disqualifying Conduct**.  A record manifesting a lack of honesty,
> trustworthiness, diligence, or reliability of an applicant or registrant may
> constitute a basis for denial of admission.  The revelation or discovery of
> any of the following may be cause for further inquiry before the board
> recommends whether the applicant or registrant possesses the character
> and fitness to practice law:
>
> \*                    \*                    \*
>
> (n) any other conduct that reflects adversely on the character or fitness of
> the applicant.

The phrase "conduct that reflects adversely on the character or fitness of the applicant"

particular rule, Plaintiff would have discussed what the rule said, how the rule was

generally applies, and why that rule is unconstitutional.  Plaintiff did not.

Instead, all of Plaintiff's allegations concern the actions of Defendants in the

processing of his Bar application, not the rule.  Plaintiff repeatedly argues that

Defendants failed to give Full Faith and Credit to the ruling of the federal court denying

the motion for contempt.  Plaintiff argues that the ruling was *res judicata* as to whether

he violated the federal court's instructions, and that Defendant's should have been

collaterally estopped to present the same behavior as a basis to deny his bar

application.  These claims do not challenge a rule of general application.  The claims

directly challenge the adjudicative decision of the Florida Supreme Court, which failed,

in Plaintiff's view, to correctly apply these legal doctrines.

Moreover, Plaintiff contends that the Florida Supreme Court's decision was

procured by the actions of the Defendants.  In other words, the harm Plaintiff suffered

did not accrue until the actions of the Defendants combined with the ruling of the Florida

Supreme Court to deny admission to The Florida Bar.  The events cannot be separated

because Plaintiff was not harmed by either Defendant until his Bar application was

denied.  A claim "is inextricably intertwined with a state court judgment 'if the federal

claim succeeds only to the extent that the state court wrongly decided the issues before

it.' "  Siegel v. LePore, 234 F.3d at 1172, *quoting* Pennzoil Co. v. Texaco, Inc., 481 U.S.

1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring).  This case

_____

is modified by the preamble to this rule, and would have to be something that shows "a
lack of honesty, trustworthiness, diligence, or reliability of an applicant," and is only
cause for further inquiry.  It is Plaintiff's responsibility to articulate why this is
unconstitutional.

is inextricably intertwined because it cannot succeed without finding that the Florida Supreme Court wrongly decided Plaintiff's application for admission.

The Florida Supreme Court has "exclusive jurisdiction" to regulate bar admission and the Florida Board of Bar Examiners was created "as an agency of the Court for the express purpose of regulating the admission of applicants to the Florida Bar."  Doc. 31, p. 6, *citing* Fla. Bar Admiss. R. 1-12; <u>Florida Bd. of Bar Examiners v. Applicant</u>, 443 So.2d 71, 74 (Fla. 1983).  The two named Defendants are sued because of their involvement in submitting a recommendation to the Florida Supreme Court.  The recommendation was accepted when the Court rendered a final decision in Plaintiff's case.  Plaintiff may not challenge the basis for the recommendation of the Defendants in this case because it would necessarily seek to overturn the approval of that recommendation by the Florida Supreme Court.

**Younger Abstention**

Plaintiff has a pending Bar application at this time and, apparently, a final decision has not been reached.  For that additional reason, this case is barred by <u>Younger v. Harris</u>, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).  The federal courts, by virtue of 28 U.S.C. § 2283, generally lack the power to enjoin pending state court proceedings, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Notions of federalism and comity led to the creation of an "abstention doctrine" which counsels against federal interference in pending state judicial proceedings. <u>Younger v. Harris</u>, *supra*.

In <u>Younger</u>, the United States Supreme Court held that an ongoing state criminal proceeding may not be enjoined "except under special circumstances."  *Id.* at 41, 91 S. Ct. at 749.  Although <u>Younger</u> was a state criminal proceeding, the Supreme Court has expanded the applicability of the <u>Younger</u> doctrine to some civil proceedings as well. *See* <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (state proceeding to enforce a nuisance statute); <u>Juidice v. Vail</u>, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (judicial contempt proceeding); <u>Trainor v. Hernandez</u>, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (civil action for return of welfare payments to state agency); <u>Moore v. Sims</u>, 442 U.S. 415, 99 S.Ct. 2371 (1979) (state child custody proceeding).

In particular, the Supreme Court held in <u>Middlesex County Ethics Comm. v. Garden State Bar Assoc.</u>, 457 U.S. 423, 102 S.Ct. 2515, 73 L. Ed. 2d 116 (1982), that <u>Younger</u> bars a federal court action challenging an ongoing state bar disciplinary proceeding.  In reaching that conclusion, the Court considered three issues: (1) does the proceeding constitute an ongoing state judicial proceeding; (2) is an important state interest implicated; and (3) does the state proceeding provide an opportunity to raise constitutional challenges.  As was the case in <u>Middlesex</u>, there are affirmative answers to each of these questions.  Florida's Bar admission process is judicial in nature, overseen by the Florida Supreme Court with a judicial avenue for redress.  Florida has a strong interest in the licensing of attorneys and, correspondingly, in protecting the public.  Finally, the process provides an applicant in Plaintiff's situation with a full and fair opportunity to raise federal claims and constitutional challenges.  <u>Middlesex</u>

indisputably controls this case and, thus, to the extent Plaintiff's current Bar application could be viewed as pending, this case must be dismissed pursuant to <u>Younger v. Harris</u>, *supra.*

**Absolute Witness Immunity**

Defendant Bassett asserts that he is absolutely immune from a lawsuit challenging his testimony to the FBBE.  Doc. 29.  The basis for that assertion is <u>Dugas v. City of Harahan</u>, 978 F.2d 193 (5th Cir 1992), a case brought by an applicant to the Florida Bar who claimed that the defendant's response to an FBBE inquiry was defamatory.  The Court in <u>Dugas</u> concluded that a witness's communication with the Board is "an important public function and furthered the interest of public good."  978 F.2d at 197.  Florida has a "vital interest in ensuring that only those applicants who are of good character and fitness be admitted to the Bar."  *Id.*  When one responds to an inquiry by the FBBE, that individual is serving an "important public function of aiding the Board in its obligation to ensure [an attorney's] good character and fitness."  *Id.*  The submission of testimony by a licensed attorney concerning the fitness of another person to be licensed by the State of Florida is within the duty of a lawyer and, pursuant to <u>Dugas</u>, is absolutely privileged under Florida tort law.  978 F.2d at 197.

Whether state tort immunity results in absolute immunity from suit pursuant to § 1983 need not be resolved.  Were this court to adjudicate whether Bassett gave false evidence to the FBBE, it would be reviewing the decision of the Florida Supreme Court because this would impinge upon the propriety of that ruling denying Plaintiff's bar application.  This is precluded by the *Rooker-Feldman* doctrine.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Gavagni's motion to dismiss, doc. 21, be **GRANTED**, that Defendant Bassett's motion to dismiss, doc.29, be **GRANTED**, and that Plaintiff's second amended complaint, doc. 16, be **DISMISSED** as the claims are barred from consideration by the Rooker-Feldman doctrine.

**IN CHAMBERS** at Tallahassee, Florida, on January 13, 2009.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**